## 1204.  TOOKE *v.* THE STATE.

1. Before this court is authorized or required to certify any question to
the Supreme Court on the ground that it is a constitutional question,
it must be specifically made in the record, and must also be necessary to
the proper determination of the case.

(*a*) An allegation, in a demurrer to an indictment, that the statute on
which the indictment is based deprives the defendant of his life, liberty,
and property, without due process of law, and is therefore violative of
the properly-designated constitutional provision on that subject, is not
sufficiently specific, unless it points out how or wherein such deprivation
takes place.

(*b*) A party can not raise a constitutional question in a case by placing
a factitious or incorrect interpretation upon a law and basing the al-
leged unconstitutionality on the effect of such an interpretation.

(*c*) Whether a statute is or is not unconstitutional must be determined
according to the construction placed upon it by that court having final
power to construe it.

(*d*) As to the construction of all criminal statutes in this State (except-
ing only certain cases arising under statutes creating felonies punish-
able by death) the Court of Appeals is the final arbiter.

2. A single accusation or indictment may include therein, in separate
counts, any number of distinct misdemeanors of the same nature.

(*a*) It is permissible to join one or more counts charging violation of the
general prohibition law, which went into effect January 1, 1908, with
counts charging violations of such laws regulating or prohibiting the
sale, etc., of intoxicating liquors as may have been in force in the
particular venue of the trial prior to that date and within the period
prescribed by the statute of limitations.

(*b*) Persons may be prosecuted and convicted for violations occurring
prior to January 1, 1908, of those laws which were suspended or repealed
by the enactment of the general prohibition law.

3. A plurality of counts in an indictment may be occasioned by the charg-
ing of the same criminal transaction as having been committed in a num-
ber of different ways, or by the charging of a number of distinct tran-

sactions of the same general nature. The courts disregard the form and look to the substance, in determining the rights of the parties under the respective methods of procedure.

(a) Upon an indictment containing more than one count, all charging misdemeanors, a general verdict of guilty is to be construed as convicting the defendant of each and every separate criminal transaction alleged throughout the indictment.

(b) If by the indictment the defendant is prosecuted for only one offense, though it contains a number of counts in which the method of the commission of this offense is variously stated, a general verdict of guilty will be upheld against the contention that it is contrary to the evidence, if any one of the counts is supported by the proof.

(c) If by the indictment the defendant is prosecuted for several distinct offenses set forth in its various counts, a general verdict of guilty can not be upheld, unless there is sufficient proof to justify a conviction under each and all of them.

(d) The jury may legally acquit the defendant as to some of the counts and convict him as to others.

(e) Where the plurality of counts is occasioned by the joining of more than one distinct misdemeanor, the better practice is to require the jury to render a separate verdict as to each count contained in the indictment and not specifically abandoned by the State's counsel or withdrawn by the court from the consideration of the jury. In a trial upon such an indictment the court should not instruct the jury that if they should find the defendant guilty under any of the counts, they should render a general verdict of "We, the jury, find the defendant guilty;" but, on the contrary, should instruct them that they should return that form of verdict only in the event they should find the defendant guilty as to each and every criminal transaction with which he stands charged.

4. Under the general prohibition law of this State (Acts 1907, p. 81), it is criminal for any person to keep or furnish any intoxicating liquor at any "public place." The phrase "public place," as here used, is to be given a relative meaning; and a place may be public during some hours of the day and private during others.

(a) The phrase "public place," as used in the prohibition law, by a broad, general, and not wholly exhaustive definition, includes any place which, from its public character, members of the general public frequent, or where they may be expected to congregate at any time as a matter of common right; also any place at which, even though it is privately owned or controlled, a number of persons have assembled, through common usage or by general or indiscriminate invitation, express or implied; it excludes those places which, though publicly owned, are devoted to a private use and are not open to the access of the public; also those places privately owned or controlled from which the indiscriminate public is generally excluded, notwithstanding that at a particular time in question a number of persons may have congregated there, if the congregation is the result of special invitation for that occasion alone.

(b) A town guard-house, relatively to a prisoner confined in a cell therein with a sole companion, is not a public place.

(c) A person's residence, primarily, is not a public place, but it may become so through the use to which the owner devotes it.

5. Upon a trial for the violation of the several provisions of the general prohibition law, evidence that the defendant received frequent shipments of liquor, that he had a large amount on hand in his home, that in his house there were generally a number of persons singing, carousing, and otherwise acting disorderly, is admissible, against the objection of irrelevancy.

6. The fact that evidence against a defendant was obtained through an illegal search of his house will not render it incompetent or inadmissible.

Accusation of unlawful sale of liquor, from city court of Oglethorpe—Judge Greer.   April 22, 1908.

Argued June 10,—Decided July 8, 1908.

*Hixon & Greer,* for plaintiff in error.

*Jule Felton, solicitor,* contra.

POWELL, J.   The defendant was convicted on an accusation charging:   (1) that on the 1st day of February, 1908, he did "sell for a valuable consideration certain spirituous, malt, or intoxicating liquors in the county of Macon, State of Georgia, said county being then and there a county wherein the sale of such liquors was at the time of said sale prohibited by law;" (2) "at the time and place aforesaid, unlawfully and with force and arms, did sell and barter for a valuable consideration certain alcoholic, spirituous, and intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication;" (3) "did, at the time and place aforesaid, then and there keep, at a public place in said county, viz., at the jail or guard-house of the town of Oglethorpe, on the public square of the county of Macon, certain alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication;" (4) "did, at the time and place aforesaid, furnish to one David Hall certain alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication, at a public place in said county, viz., at the guard-house or jail of the city of Oglethorpe, upon the public square of the county of Macon;" (5) "at the time and place aforesaid did keep on hand at his place of business certain alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication."

32

Upon arraignment he filed a demurrer containing the following grounds: "Because said accusation charges defendant with the commission of a crime under two separate and distinct laws, to wit, local-option law as was of force in some counties in the State prior to 1908, and the general prohibition law of 1908, in one and the same accusation." "Because said accusation in the first count charges the defendant with the violation of the local-option law as it existed and was of force in said county of Macon prior to January 1, 1908, and in the same accusation, in counts second, third, fourth, and fifth thereof, charges the defendant with the violation of the prohibition law and different provisions thereof as embodied in act of 1907, page 81, going into effect January 1, 1908." "Defendant demurs to the first count of said accusation, for that the local option law, as it existed, if at all, in the county of Macon prior to 1908, was superseded and repealed by the general prohibition law of 1907, going into effect January 1, 1908." "Defendant demurs especially to count third in said accusation, for that that portion of the general prohibition law embodied in acts of 1907, p. 81, that attempts to prevent the keeping at public places alcoholic, spirituous, malt, or intoxicating liquors or bitters is unconstitutional and void, is repugnant to and violative of article 1, section 1, paragraph 3, of the constitution of the State of Georgia, as embodied in Civil Code, §5707, and it is a deprivation of life, liberty, and property, without due process of law. And further, said portion of said act is unconstitutional and void, contrary to and violative of article 1, section 1, and paragraph 3, of the constitution of the State of Georgia, as embodied in Civil Code, §5730, in that each court trying a case thereunder would necessarily have to determine what would be and constitute a public place, and such determination would necessarily be ex post facto law. As to the case on trial, said portion of said act is further unconstitutional and void because it violates the spirit and letter of the fourteenth amendment of the constitution of the United States; and the same is further unconstitutional, void, and illegal for want of general uniformity and certainty. Different courts, in adjudicating and determining what would constitute a public place, would necessarily vary, according to temperament, environment, training, fixed beliefs, etc., of such courts." "Defendant demurs specially to count fourth in said accusation, for that that

portion of the general prohibition law embodied in acts of 1907, p. 81, that attempts to prohibit the furnishing at public places alcoholic, spirituous, malt, or intoxicating liquors or bitters is unconstitutional and void, is repugnant to and violative of article 1, section 1, paragraph 3, of the constitution of the State of Georgia, as embodied in Civil Code, § 5707, and it is a deprivation of life, liberty, and property without due process of law. And further, said portion of said act is unconstitutional and void, contrary to and violative of article 1, section 1, paragraph 3, of the constitution of the State of Georgia as embodied in Civil Code, § 5730, in that each court, in trying a case thereunder, would necessarily have to determine what would be and constitute a public place, and such determination would necessarily be ex post facto law. As to the case on trial, said portion of said act is further unconstitutional and void because it violates the spirit and letter of the fourteenth amendment of the constitution of the United States; and the same is further unconstitutional, void, and illegal for want of general uniformity and certainty. Different courts, in adjudicating and determining what would constitute a public place, would necessarily vary according to temperament, environment, training, fixed beliefs, etc., of such courts." "Because said act of the legislature of 1907, embodied in acts of 1907, p. 81, constituting the general prohibition law of the State of Georgia which went into effect January 1, 1908, and so much thereof that attempts to prescribe that no alcoholic, spirituous, malt or intoxicating liquors or bitters shall be kept in one's place of business, is illegal and void, for that it is a deprivation of property without due process of law, is a restriction upon one of the most valuable characteristics of possession of property, that it is unreasonable and therefore violative of and contrary to article 1, section 1, paragraph 3, of the constitution of the State of Georgia, as embodied in Civil Code, § 5707."

The court overruled the demurrer, and the defendant preserved exceptions pendente lite. Upon the trial a general verdict of guilty was returned; the defendant filed a motion for a new trial, on various grounds; and to the overruling of this he also brings error. Further facts necessary to an understanding of the points presented will be stated in the course of the opinion.

1. We shall first examine the grounds of the demurrer with

the purpose of ascertaining whether they present any such constitutional questions as to require us to certify them to the Supreme Court for decision. The ground that the portion of the general prohibition law which prohibits the keeping of liquors at public places is repugnant to article 1, section 1, paragraph 3, of the State constitution, in that the defendant is thereby deprived of life, liberty and property, without due process of law, is too vague and indefinite to present any question for decision. It does not state how or wherein the defendant is to be deprived of his life [sic], his liberty, or his property. This also applies to the similar attack upon that portion of the act which prohibits the furnishing of liquors at public places.

The grounds alleging that these provisions of the act are contrary to article 1, section 1, paragraph 3, of the State constitution, because "each court trying a cause thereunder would necessarily have to determine what would be and constitute a public place, and such a determination would necessarily be ex post facto law," present no question requiring certification. Should we overlook the fact that the portion of the constitution in which ex post facto laws are forbidden is not contained in the section and paragraph stated, but in article 1, section 3, paragraph 2, nevertheless the objection is bad,—the demurrer is speaking. The act does not leave to each court trying a cause the determination of what would be a public place. What is a public place is not a matter of finding of fact, but of construction and definition. While each given case may involve the determination of the question whether, under the facts presented, the place alleged was or was not, at the time of the transaction, a public place, still the subject-matter of the enactment remains fixed and uniform. Under the act itself, neither the court nor the jury can, by construction or finding, declare that to be a public place which was not so at the time the alleged offense was committed. Since the demurrer assumes the contrary of this proposition, it is speaking. A party can not create a constitutional question by giving to a law a factitious meaning. This court is the final arbiter as to the meaning of all criminal statutes in this State, except those creating crimes punishable by death; and we will not certify to the Supreme Court any alleged constitutional question which places upon a statute which we have the final right to construe an interpretation which we have not adopted,

and which we can not and do not adopt. It is an old principle that the constitutionality of a law is to be determined only from that construction placed upon it by that court whose duty it is finally to declare its meaning. The constitutional amendment creating this court requires certification of a constitutional question only when that question is necessary to the proper determination of the case; to certify a question based on a construction different from that adopted by us and applied in the actual administration of the law would be to certify a question not necessary to the proper determination of the case.

The point that the act, so far as it prohibits the keeping of intoxicating liquors at one's place of business, is unconstitutional, is immaterial to the decision of the present case, as there was no testimony offered in support of the count of the indictment alleging a violation of this part of the law.

2. As to the other grounds of the demurrer: it is permissible to join one or more counts charging violations of the general prohibition law which went into effect January 1, 1908, with counts charging violations of such laws regulating or prohibiting the sale, etc., of intoxicating liquors, as may have been of force in the particular venue prior to that time and within the statute of limitations. *Sutton* v. *State,* 124 *Ga.* 815 (53 S. E. 381); *So. Express Co.* v. *State,* 1 *Ga. App.* 700 (4), (58 S. E. 67). The demurrer on the ground of the alleged improper joinder of offenses was properly overruled. We may say in passing that the better practice in such cases would be to allege, as the time of the violation of the general prohibition law, some date subsequent to January 1, 1908; and as the time of the violation of statutes suspended or repealed by that law, some date prior to January 1, 1908; but a dereliction of this nature can be reached only by a special demurrer. *Newsome* v. *State,* 2 *Ga. App.* 392 (58 S. E. 672). It is still legally possible to indict and convict for violations of any of the laws repealed or suspended by the enactment of the general prohibition law, provided the offense occurred prior to January 1, 1908. By section 18 of the Penal Code, "All crimes shall be prosecuted and punished under the laws in force at the time of the commission thereof, notwithstanding the repeal of such laws before the trial takes place." See also *Patton* v. *State,* 80 *Ga.* 714 (6 S. E. 273).

3. There was a general verdict of guilty. This means guilty
on every count. Where offenses of different grades are joined in
the same indictment, a general verdict of guilty means guilty of
the highest offense (*Dean* v. *State,* 43 *Ga.* 219; *Estes* v. *State,* 55
*Ga.* 132); but where several misdemeanors, which though of the
same general character are separate and distinct offenses, are joined
in different counts of the same indictment, such a verdict is to
be construed as a conviction on all of the counts. *Driver* v. *State,*
112 *Ga.* 229 (4), (37 S. E. 400); Bishop's New Crim. Proc.
§§1005 (*a*), 1015 (*a*) 4. That confusion to which Bishop refers,
in the section last cited, as arising from the fact that "a plurality
of counts may mean that each one or each group thereof is for a
distinct offense, or mean that one offense is charged in different
ways, or that there is a mixture of the two methods," exists to
some extent in this State. Our Penal Code, §1033, provides that
on the trial of all criminal cases the jury shall give a general ver-
dict of guilty or not guilty. It is held, however, that a verdict of
guilty, specifying the particular counts to which it relates, is
nevertheless a general verdict; and that there may be a conviction
as to some of the counts and an acquittal as to the others. *Roberts*
v. *State,* 14 *Ga.* 8 (5), (58 Am. D. 528); *Lynes* v. *State,* 46 *Ga.*
209 (3); *Wilson* v. *State,* 67 *Ga.* 658. Confining our attention
now to indictments charging misdemeanors only, we find that if
the indictment as a whole relates to but one offense, to but one
transaction, stated in different counts with variation of details so
that the indictment, as pleading, may adapt itself to the different
phases which may appear in the proof at the trial, a general ver-
dict of guilty, without any specification as to the count on which it
is rendered, is sustainable and proper, if any one of the counts
be supported by sufficient proof. *Dohme* v. *State,* 68 *Ga.* 339.
See also *Stewart* v. *State,* 58 *Ga.* 577; *Williams* v. *State,* 107 *Ga.*
693 (33 S. E. 641). On the other hand, if by the indictment the
State is prosecuting not merely for one offense, but charges several
different and distinct transactions, though of a kindred nature,
in the respective counts of the indictment, a general verdict of
guilty is not sustainable, and is contrary to the evidence, unless
the proof is such as to uphold a conviction as to each and every
offense alleged. *Driver* v. *State,* supra. The State's counsel may
abandon or the judge may withdraw from the consideration of

the jury the unsupported counts, and in that event a general verdict of guilty will relate only to the counts submitted. *Weaver* v. *State*, 108 *Ga.* 775 (33 S. E. 423). See also *Camp* v. *State*, 91 *Ga.* 8 (16 S. E. 379). The cases of *Dohme* and *Driver*, supra, are sufficiently alike in general complexion to present clearly the existing distinction. In *Dohme's* case the defendant was indicted for a single transaction, the maintenance of a gaming-house; in one count the maintenance is alleged to have been immediate— that the defendant kept the house himself; in the other indirect— that he rented the rooms to another for the purpose of gaming; and in that case, therefore, proof that the defendant was guilty of the one crime in either of the forms alleged authorized a general verdict of guilty. In *Driver's* case the three counts alleged three distinct transactions, not merely one transaction with the circumstantiality of its commission varied; it alleged the maintenance of a gaming-house, the maintenance of a gaming-table, also gaming; and there being no proof that the defendant maintained the house or kept the table, the general verdict of guilty was set aside, though there was sufficient evidence to convict him of the gaming. In a case like *Dohme's,* separate indictments could not be returned for the offense in its different phases; or, if so, a jeopardy under one of such indictments would bar a prosecution under any other. In a case like *Driver's,* separate indictments may with perfect propriety be returned for the separate offenses, and jeopardy under one of them would afford no bar to a prosecution under either of the others. A paramount reason why the distinction should exist is this: where the indictment relates to a sole transaction, and the pleader, not being certain as to the exact manner in which he shall be able to prove that the crime was committed, yet knowing that if he describes the offense with alternative or ambiguous allegations he renders the indictment subject to demurrer for duplicity, resorts to the fiction of charging that the defendant has committed a number of crimes, all in fact the same, yet varying in detail,—that is, charges the same offense in different counts, as if it were a number of transactions,—the court on the trial of the case, and the appellate tribunal on a review of it, largely disregard the fiction and look to the substance, and not the form of the charge. Hence if the defendant is convicted generally,—that is to say on all of the counts,—the court imposes

but a single sentence; or (under the former practice in England and under the present practice in some of the States) meets fiction with fiction, and imposes several sentences, but makes them run concurrently. On the other hand, where the same indictment really charges a number of distinct and separate transactions, it becomes the duty of the trial court to conduct the case, and of the appellate court to review it, just as if it were a consolidation of separate indictments; and where the defendant was convicted generally,—that is to say, on all of the counts—or specifically on more than one of them,—it was the course at common law to sentence the defendant on each count; and these sentences might be cumulative. For some reason, it has not been the practice in this State to impose cumulative sentences, upon the different counts of an indictment charging distinct offenses; but we know of no reason why it may not be done; for as to these things we are supposed to follow the common law. Indeed, all through the course of our reports are to be found intimations that the power to impose more than one sentence in such a case exists. Section 1041 of the Penal Code directs that in felonies, where the defendant is prosecuted and convicted on more than one indictment, the penalties shall be successive. Notwithstanding this provision, it is held in *Fortson* v. *Elbert County,* 117 *Ga.* 158 (43 S. E. 492), that as to sentences in misdemeanor cases the rules of the common law prevail. See also *Simmons* v. *Ga. Iron Co.,* 117 *Ga.* 318 (43 S. E. 780, 61 L. R. A. 739). By keeping in mind these fundamental differences between indictments plural in form only and those plural in substance also, many cases throughout our reports, which are frequently supposed to be conflicting, are found to be harmonious. In the case at bar the accusation was plural in substance; the court, therefore, incorrectly instructed the jury that in case they found the defendant guilty on any of the counts, they should return a general verdict of guilty. And since some of the counts were not supported by proof, the verdict so rendered, under the reasoning above presented and under the direct authority of the *Driver* case, supra, must be set aside, as being contrary to the evidence and without evidence to support it.

4. We shall not discuss all of the points made in the motion for a new trial, for many of them are necessarily covered by what is decided above. However, one of the points presented requires us

to define a "public place," as that expression is used in the general prohibition act. Among other things, that statute (Acts 1907, p. 81) makes it criminal for any person "to give away to induce trade at any place of business, or keep or furnish at any other public place," any of the prohibited liquors. By two of the counts in the accusation the defendant was charged with violating this provision by having whisky at the town guard-house in Oglethorpe, and furnishing it to another there, it being alleged that the town guard-house was a public place. The proof showed that the defendant, while a prisoner in the guard-house, had a flask of whisky in the cell with him, and gave his cell-mate a drink of it.

The expression "public place" has been a matter of frequent judicial definition. There are two general lines in which these definitions run, dependent largely, in each case, upon the particular context of the subject-matter of the enactment in which the words appear. The one looks to the ownership of the place; and in this view, any building, premises, or lot owned by any branch of the government, or devoted to its uses, is a public place; and if this definition were adopted as to the law before us, a town calaboose or guard-house would be a public place. The other definition looks to the congregating of a number of persons, by common right or usage, or by a general express or implied invitation, as furnishing the element of publicity. Shelbogan v. State, 9 Tex. 430; State v. Alvey, 26 Tex. 155; State v. Barnes, 25 Tex. 654; Arnold v. State, 29 Ala. 46; State v. Luce, 9 Houst. (Del.) 396 (32 Atl. 1076). We are satisfied, from the context and the nature of the enactment, that the legislature in the present instance intended that the latter meaning should attach. The introduction of the word "other" into the context, immediately preceding the phrase "public place," strongly argues for this interpretation; because the place just previously mentioned is "place of business," which is not a public place in the sense of being devoted to governmental use. The object of this portion of the statute was to prevent the having of liquors at those places where they would tend to create a public nuisance. As used in this sense, the phrase "public place" is one of great relativity; a place may be public at one time of the day and private at another. Defining broadly and generally, we shall say, then, that the term "public place," within the purview of this law, includes any place which, from its

public character, the members of the public frequent, or where they may be expected to congregate at any time as a matter of common right; also any place at which, though privately owned or controlled, a number of persons have assembled, through common usage, or by general invitation, express or implied; it excludes those places which, though publicly owned, are devoted to a private use and are not open to the access of the public; also those places privately owned and controlled from which the indiscriminate public is generally excluded, notwithstanding that at a particular time in question a number of persons may have congregated there, if the congregation is the result of special invitation for that special occasion alone. We derive this general definition from a review of the large number of decisions rendered by the courts generally throughout the country upon similar phrases in criminal statutes. An excellent collection of cases will be found in 6 Words & Phrases, 5806. As exemplifying this definition, the following examples may be given. Public rooms and spaces of public buildings, such as court-houses, post-offices, etc., where the people do come or may come at all times as a matter of common right, are per se public places. Public offices in such buildings, where business with the public is transacted, are also public places. Railway coaches and stations, boats, wharfs, omnibuses, theatres, churches, schoolhouses, and such places are protected during the period in which they are open to the congregating of persons. Dickey v. State, 68 Ala. 508; Reg. v. Watson, 20 Eng. L. & Eq. 599, 600; Reg. v. Holmes, Id. 597; Coleman v. State, 13 Ala. 602; Bishop v. Commonwealth, 13 Grat. (Va.) 785, 787. Stores, offices, shops, etc., while open for trade or business, are public places, but are covered by the preceding clause of the act which relates to places of business (a term which has been defined by this court in *Roberts* v. *State,* ante, 207, 60 S. E. 1082). Lorimer v. State, 76 Ind. 495, 496; Parker v. State, 26 Tex. 204; Williams v. State (Tex.) 34 S. W. 271; Campbell v. State, 17 Ala. 369; Windsor v. Commonwealth, 4 Leigh (Va.) 680; Commonwealth v. Feazle, 8 Grat. (Va.) 585. While closed to the public they are not within this immediate portion of the law. Graham v. State, 105 Ala. 130 (16 So. 934); Windsor v. Commonwealth, supra; Lorimer v. State, supra; Sherrod v. State, 25 Ala. 78. The lobbies, parlors, dining-rooms, etc., of a hotel are

prima facie public; the individual rooms set apart for guests usually are not so, but may become so. Wortham *v.* Com., 5 Rand. (Va.) 669, Neal *v.* Com., 22 Grat. (Va.) 917; Bordeaux *v.* State, 31 Tex. Crim. 37 (19 S. W. 603); Comer *v.* State, 26 Tex. App. 509 (10 S. W. 106); Weiss *v.* State, 16 Tex. App. 431. The rooms of bona fide private clubs of select and discriminate membership, to which only members and specially-invited guests are permitted access, are prima facie not public; if the membership of the club is organized upon an indiscriminate basis, or if it admits upon special invitation, or if it is not a bona fide organization, or if it be organized or maintained chiefly for the purpose of encouraging or facilitating the drinking of liquors, it is a public place while persons are congregated there. Goldstein *v.* State (Tex.), 35 S. W. 289; Grant *v.* State, 33 Tex. Crim. 527 (27 S. W. 127). To have liquor at a public picnic, barbecue, or other entertainment where the guest list is not bona fide personal and exclusive, would be a violation of the statute; though to have it at a private entertainment, barbecue, banquet, or dinner (not given in a place otherwise public), where one or more special guests are entertained for the special occasion by a private person, or even by a private club or society, would not be. A man's home, his private apartments in a hotel or lodging house, his private office into which the public are not expected to come, are primarily not public places, but may be made so. If a person keeps liquor in his home or other private place, and allows persons to come there for it, and is accustomed to furnish it to them there, whether with or without pay, under such circumstances as to indicate that his premises are usually accessible to the neighboring public, or to a generality of people, he makes it a public place. Coleman *v.* State, 20 Ala. 51; Nichols *v.* State, 111 Ala. 58 (20 So. 564); State *v.* Sowers, 52 Ind. 311; Roquemore *v.* State, 19 Ala. 528; Lafferty *v.* State, 41 Tex. Cr. 606 (56 S. W. 623); Sewell *v.* Taylor, C. B. (N. S.) 160; State *v.* Spaulding, 61 Vt. 505 (17 Atl. 483). These examples are not presented as being exhaustive; nor as prejudging any particular state of facts. They are given merely for concrete illustration of what we had more generally and abstractly stated above. Tested by the definition of a public place, as thus defined and exemplified, it will be seen that while a town guard-house may be made a public place by an assemblage of persons there, it is not primarily

nor per se such a place. State *v.* Alvey, 26 Tex. 155. So public offices therein may be, while the cells are not. Certainly, relatively to a prisoner confined in a cell with a sole companion, it is not so. If the defendant had been charged with keeping the liquor on hand at his home, with due allegations as to how he had made that a public place, the conviction as to that might have been sustained under the proof; for it seems, according to his own statement, as well as from the proof, that he had large quantities of liquors on hand in his home, that persons frequented there day and night in unusual numbers, that he made a practice of ordering liquor for other persons, and of receiving it and delivering it there; but the conviction which might otherwise rest on this state of facts must be set aside because the accusation alleges that the transaction occurred at the guard-house, and not at the defendant's home.

5.    Evidence that the defendant received frequent shipments of liquor in unusual quantities, that he had a large amount on hand in his home, that in his house there were generally a number of negroes singing and carousing and creating a "rough house," was admissible on the trial, under the accusation, against the objection of irrelevancy. *Bonner* v. *State,* 2 *Ga. App.* 711 (58 S. E. 1123) ; 7 Enc. Evidence, 735 (*d*), 739 (H), 741 (*d*), 760 (R).

6.    Evidence tending to incriminate the defendant was admissible, over the objection that it was procured through an illegal search of his house, even though he were also illegally arrested at the time. *Glover* v. *State,* ante, 455 (61 S. E. 862) ; *Croy* v. *State,* ante, 456 (61 S. E. 848) ; 7 Enc. Ev. 745 (L).

*Judgment reversed.*