## 1273. JENKINS, *alias* JINKS, *v.* THE STATE.

1. The phrase "at their place of business," appearing in the general pro-
hibition statute of 1907, includes in its meaning the immediate room
or place in which the business in question is conducted, also any near-by
room or place used by the proprietor in connection with the business
or in such a relation to the actual place of business as to indicate that
the near-by room, compartment, etc., is a convenient place which the
proprietor would probably use for keeping therein such liquors as he
might desire to furnish others for the purpose of inducing trade, or for
keeping therein liquors intended for unlawful sale under cover of the
business carried on in the main place.

(a) The preposition "at" has a great relativity of meaning, conforming
readily to the nature of the thing which constitutes its grammatical
object and to the principal notion in the mind of the person using it.
It generally includes in its meaning all that "in" would, but not quite
as much as "in and near" would.

(b) "A place of business," within the purview of the State prohibition
law, means a place devoted by the proprietor to the carrying on of some
form of trade or commerce.

2. An officer who discovers a person keeping intoxicating liquor at his
place of business may arrest him without a warrant, and may seize
the liquor for the purpose of using it as evidence.

3. Where a defendant is indicted under two names, alleged by an alias
dictus, it is necessary only that the State should show that he is com-
monly known by either of them.

Accusation of violating liquor law; from city court of La-
Grange—Judge Harwell. May 25, 1908.

Argued October 5,—Decided October 21, 1908.

*M. U. Mooty, Gaffney & Greer,* for plaintiff in error.

*Henry Reeves, solicitor,* contra.

POWELL, J. Jenkins, by his friends familiarly called Jinks, had
a little store in LaGrange; and to the rear, partially cut off by a
partition wall, was a smaller room, in which no goods were usually
bought and sold, but in which he kept coca-cola and stored "plun-
der." For some reason—he doesn't explain why, but then some
officers are naturally suspicious of some folks—the chief of the
police of the city suspected that Jinks was occasionally selling a
little liquor. So on a certain Saturday afternoon the chief of
police, sauntering leisurely in the neighborhood of the store, was
"given the wink" by some one who had been stationed to watch,
and immediately thereafter, going into the store and into the
back room, found a man and two women standing in the presence

of a two-gallon jug and some whisky glasses. The jug was empty, but the mouth of it was still wet and smelled of the corn whisky which had just passed through it. The glasses, too, were moist, and in the bottom of one of them remained about a teaspoonful of corn whisky. Upon the interruption of the policeman the party explained that they were drinking cider. The suspicious gaze of the officer fell also upon a closed box, the contents of which were guarded with a lock; so he asked Jinks if he might see inside the box, to which Jinks replied that he might. When Jinks unlocked the box another small bottle of whisky was found therein. There was also in the store a trap-door, leading into a cellar. In the cellar was found a number of empty jugs. The officer had no warrant for the defendant's arrest and no search warrant for his premises. The testimony of the defendant's witnesses was to the effect, that he, together with a party of friends, had ordered some whisky on joint account; that on the night before, it had arrived in the defendant's absence, and they had divided it and had left the defendant's share in his back room. The defendant himself explained the presence of the liquor in the box, by saying it was a little he was keeping for his wife. We may say, in passing, that the wives of this country must be hard drinkers if all the explanations of husbands as to their possession of liquors is to be taken as true. The defendant was put on trial for violating the prohibition act of 1907, by having and keeping liquor on hand at his place of business.

1. Counsel for the plaintiff in error contends that the having of the liquor in the back room, especially so far as it was kept in the lock-box, did not constitute a having or keeping on hand of liquor at the defendant's place of business. Indeed, to quote directly from his brief, he says: "The jury evidently proceeded upon the idea that to keep on hand at one's place of business means simply to have at one's place of business, or around one's place of business, or near one's place of business; which is not the law." He further contends, that the law is not violated unless the keeping is a public keeping at a public place of business, and that to have it locked in a box is not so to keep it; that before the law is violated, the liquor must be accessible to the customers of the place of business. The definition of what is a place of business is a matter of law, for the determination of the court; the

finding as to whether any particular place falls within the definition is a matter of fact, for the determination of the jury, except in those cases where the facts necessary to constitute the particular place a place of business are conceded to exist. *Tooke* v. *State, 4 Ga. App.* 495 (61 S. E. 917); *Roberts* v. *State, 4 Ga. App.* 207 (60 S. E. 1082). The same is true of the word "at," as employed in the phrase of the prohibition act, "keep on hand at their place of business." "At" is not a word of precise and accurate meaning or of clean, clear-cut definition. It has a great relativity of meaning, shaping itself easily to varying contexts. The standard authorities say that it sometimes means "in" or "within," and sometimes "in and near." See Words & Phrases, vol. 1, pp. 595 et seq; vol. 8, p. 7585. The Supreme Court, in *Minter* v. *State,* 104 *Ga.* 753 (30 S. E. 992), said: "The word 'at' is somewhat indefinite; it may mean 'in' or 'within,' or it may mean 'near.' Its primary idea is nearness, and it is less definite than *in* or *on*. *At* the house may be in or near the house. Webst. Dic. The word *at* is used 'to denote near approach, nearness or proximity.' Richardson's English Dict. It is a relative term, and its signification depends largely upon the subject-matter in relation to which it is used and the circumstances under which it becomes necessary to apply it to surrounding objects. 3 Am. & Eng. Enc. L. 168, and cases cited in note 1." We think that in the context before us it means more than "in" and less than "in and near." It includes all that "in" would include, and includes less than all that "in and near" would include. That which would be designated if the word "near" were used is not designated by the word "at," unless it is associated in some relationship with that which would be thought of if the word "in" were used; but where between what is *near* and what is *in* there is an association and a relationship to the principal notion in the mind of the user of the language, the things so associated and related are properly referred to by the use of the word "at." The phrase "at their place of business," as used in the prohibition statute, includes the immediate room or place in which the business is conducted; also all the near-by surroundings, so far as they are connected with that room or place in any of those associations or relationships which have reference to the principal notion which was in the legislative mind. One of the notions in the legislative mind was that to allow persons

to keep liquors at their places of business would afford them the opportunity of using the liquors to induce trade—a thing already forbidden by law. Another notion, we infer, was that the maintenance of an apparently legitimate business might be used as a cloak to conceal the carying on of an unlawful traffic in liquors. Of course a place of business is also a quasi public place; and those considerations which led the legislature to forbid the having of liquors in other public places and which were referred to in *Tooke's* case, supra, were likewise presumably in contemplation when the phrase in question was employed. So that to progress further toward a practical definition, we may say that the phrase "at their place of business," as used in the prohibition statute, includes in its meaning the immediate room or place in which the business is conducted; also any near-by room or place owned or used by the proprietor in connection with the business, or in such a relationship to the actual place of business as to make the near-by room, apartment, etc., a convenient place which the proprietor would probably use for keeping such liquors therein as he might desire to furnish others to induce trade, or for keeping therein liquors intended for unlawful sale under cover of the business carried on in the main place. The reasonableness and the probability of the near-by room or place being used for either or both of the purposes indicated is to be judged (usually by the jury) from all the surrounding circumstances, and especially from the manner in which it is actually used, if that fact be shown.

That the foregoing definition is not evolved factitiously, or by refining beyond due and legitimate refinement, will be apparent to any one who takes the pains to call to mind a few examples of the use of the word "at." As showing how this preposition varies in range of meaning, according to the nature of the thing which constitutes its grammatical object and of the principal notion in the speaker's mind, we give the following examples. It is correct to speak of a young man as being "at" the University of Georgia not only when he is in the buildings or on the campus, but when he is *in* or *near* Athens, the seat of the University, and is connected with the school in any of the usual relations. It would not be correct to speak of one having no relationship to the school as being "at" the University of Georgia, unless he were at least *upon* the campus. The word "at" in the statement "The

view at Mount Yonah is magnificent" is broad enough to compass a wide range of territory. We say he lives "at New Hope Church" of a man who lives not in the church, but somewhere in the community in which the church is located. But if we say, "He took communion at New Hope Church" we mean *in* the very church-house itself, unless something else, known or assumed to be contained in the principal notion in connection with which the statement is made, otherwise limits its meaning. So we conclude that it would be unnatural and unreasonable for us to catch in the phrase "at their place of business," found in the prohibition statute, no other meaning than we would catch if the phrase "within their place of business" had been used.

We wish to say further that the foregoing approach to a definition is provisional only. It may need future extension or limitation. The law is of too recent enactment and the illustrative cases have been too few for us to believe that our judicial comprehension of the many new questions naturally arising under it has become sufficiently developed to compass the whole field, and to evolve a final definition. It is our whole desire to arrive at an open-minded, unbiased interpretation of the law and of every part of it; such an interpretation as will be judicial and intelligent and as will give the legitimate effect to the legislative will, without either limitation or extension on account of the personal views of ourselves, or of anybody else, or of any class of persons.

Lawyers and trial judges, in making application of the definition announced, should be careful to remember that it is to be taken in connection with the other provisions of the prohibition law itself and with the previous decisions of this court on the same and cognate subjects. It should be kept in mind that we are now dealing with the phrase "at their place of business," and not with the other phrase found in the act, "at any other public place." The underlying considerations for prohibiting the keeping of liquors at places of business are broader than the reasons for prohibiting their being kept or had at other public places. It must be remembered, too, that the "business" referred to in the phrase now under contemplation means, as its context shows, trade or some form of commerce. The *Roberts* case, supra, makes this distinction clear.

The present defendant was clearly guilty of keeping the intoxicating liquors at his place of business. It was not necessary for the State to show, as he contends it should have shown, that the liquor was publicly kept. Usually less harm is likely to result from a public than from a secret keeping of liquor at a place of business.

2. Exception is taken to the admission in evidence of the testimony of the chief of the police as to finding the liquor in the lock-box, on the ground that the arrest, search, and seizure were unlawful. The arrest and seizure were legal, though made without warrant. *Smith* v. *State,* 3 *Ga. App.* 326 (59 S. E. 934). At least as to the liquor which was in the jug and in the glasses; the crime was committed in the officer's presence. Besides, evidence is not rendered inadmissible merely because it is obtained by an unlawful search. *Ivey* v. *State,* ante, 828 (62 S. E. 565); *Thompson* v. *State,* ante, 649 (62 S. E. 99); *Williams* v. *State,* 100 *Ga.* 511 (28 S. E. 624, 39 L. R. A. 269).

3. The third headnote needs no elaboration. See *Stinchcomb* v. *State,* 119 *Ga.* 442 (45 S. E. 639).      *Judgment affirmed.*