### 1303.  ·BASHINSKI *v.* THE STATE.

1. Upon the question as to whether the rooms in which the defendant kept intoxicating liquors were "at his place of business," the decision rendered this day in the case of *Jenkins* v. *State,* 4 *Ga. App.* 859 (62 S. E. 574), is controlling.

2. The trial judge may, without invading the province of the jury, define to them what a place of business is, if he leaves to the jury the determination of whether the particular place in question is, under the facts, within the definition. Such places as merchandising establishments, stores, restaurants, "soft-drink" dispensaries, etc., are judicially recognized as places. of business, and the court may legally so inform the jury.

3. A near-by room which a person uses in connection with the business conducted by him in his regular place of business is a part of his place of business, within the purview of the general prohibition statute.

4. If a person should make a common practice of selling liquor illegally at a fixed place, that place would thereby become his place of business; but a single sale of liquor, or even sporadic sales, will not ipso facto convert the place where the sale occurs into the seller's place of business, in accordance with the meaning of that phrase as found in the prohibition act of 1907.

Accusation of misdemeanor, before Judge Hodges—city court ·of Macon. June 20, 1908.

Argued October 6,—Decided October 21, 1908.

Bashinski was convicted on an accusation charging that he did "keep on hand, at the place of business of said I. Bashinski, alcoholic, spirituous, malt, and intoxicating liquors." It appears from the record that prior to the date on which the general prohibition law went into effect, the defendant ran a saloon in Macon. After that date he opened up, in the place formerly occupied by the saloon, a restaurant and "soft-drink" dispensary. From the room in which the restaurant was conducted a door led into a passageway or closed hall. Opening into this hall was a door leading into another suite of rooms and the landing of a stairway. At the end of the passageway and hall another door led into a room which we will call the downstairs storage room. Upstairs was a bedroom, and back of it another room, which we will call the upstairs storage room. The approach to all these rooms was through the restaurant and the passageway we have mentioned.

On the night of April 29, 1908, the police made a raid upon the place. In the downstairs storage room were found portions of two barrels containing a whisky compound, a quantity of crême

de menthe, absinthe, and wines, and several barrels of whisky. In the bedroom upstairs were several open cases of whisky and nine bottles of malt ale. In the adjoining storage room were forty-one unopened cases of different sorts of whisky, also a number of empty cartons and whisky wrappers. In the downstairs storage room there was nothing but whisky, wines, and other intoxicating liquors. A policeman testified to having seen packages delivered to persons from that room at frequent intervals prior to the raid; but so far as his knowledge went, no one but Bashinski himself actually entered the room. The doors to all the rooms where whisky was found were locked. The policeman was able to state that at least one of the packages delivered by Bashinski from the downstairs storage room was whisky; he gave the money to a man named Snipes, who bought it while he watched. Snipes, however, testified that this was not true. There was testimony as to other individual sales of liquor being made by the defendant from this room, but this testimony was also contradicted. The defendant's contention, as gleaned from his statement to the jury, was that when he closed his barroom on December 31, 1907, he had a quantity of liquors left on hand, and that he put them into these rooms, which were not connected with his place of business; that two of the rooms in which the liquors were found were storage rooms only, and that the other was his private bedroom; that he had never sold or delivered whisky or other intoxicants from these rooms, and had never had any intoxicating liquors in his place of business conducted by him as a restaurant and "soft-drink" dispensary.

*Minter Wimberly, Jesse Harris, John R. Cooper*, for plaintiff in error.

*William Brunson*, solicitor-general, *Roland Ellis*, contra.

POWELL, J. (After stating the foregoing facts.)

1. Under the opinion this day filed in the case of *Jenkins v. State*, 4 *Ga. App.* 859 (62 S. E. 574), it is plain that the jury would have been authorized, but not required, to find that the rooms in which the defendant kept the liquors were within the legal definition of the phrase "at his place of business."

2. Exceptions are taken to several instructions of the court to the jury, of which the following is fairly illustrative: "I charge you, gentlemen of the jury, that if you believe, from a considera-

tion of the evidence adduced upon the trial of this case, that the defendant, at the time alleged in this accusation, or any time after the first of January, 1908, to April 29, 1908, was engaged as a restaurant keeper and soft-drink dispenser, and that to the establishment wherein he operated, the public was impliedly or expressly invited to come and trade, such a restaurant and soft-drink establishment did constitute, in law, a place of business, and it would be a violation of the law of Georgia for him to keep on hand, in connection with such restaurant or soft-drink dispensary, alcoholic, spirituous, malt, or intoxicating liquors, for any purpose whatever." We approve this instruction. The court did not invade the province of the jury by telling them what use would constitute a room a place of business. *Tooke* v. *State,* 4 *Ga. App.* 495 (61 S. E. 917); *Jenkins* v. *State,* supra.

3. Exception is also taken to the following charge: "If you believe, from a consideration of the evidence adduced on the trial of this case, that he did keep such restaurant, that he did keep such soft-drink dispensary, and that on the premises of this establishment conducted by him, and connected therewith in said business, there was a room wherein he had stored alcoholic, spirituous, malt, or intoxicating liquors in any quantity, I charge you that if such storage room was connected with that place of business, the prisoner at the bar would be guilty of a violation of the law of Georgia." We can not condemn this instruction. It is contended that the use of the phrases, "connected therewith in said business," and "connected with that place of business," were misleading, and required special explanation and definition to the jury. We do not think so. We can not believe that the jury were misled into believing that the judge spoke of a physical connection.

4. There is an instruction excepted to, however, which we find to be erroneous. It is as follows: "I charge you further that if you believe, from a consideration of the evidence adduced upon the trial of this case, that the defendant, in any place whatever in the county of Bibb, after the first of January, 1908, to the 29th of April, 1908, inclusive, kept on hand in any place for the purpose of selling, and did sell in any quantity whatever, alcoholic, spirituous, malt, or intoxicating liquors, that he would be guilty of keeping unlawfully on hand at his place of business alcoholic, spirituous, malt, and intoxicating liquors." The defendant, it

must be remembered, was not charged with selling liquor, but only with keeping it on hand at his place of business. If he also sold, the present prosecution is no bar to a separate prosecution for that offense. *Tooke's* case, supra. The effect of the charge now under consideration is to declare that every place at which a person keeps on hand and sells any quantity of liquor, even to the small extent of a single sale, thereby becomes his place of business. We do not so construe the law. Without citing examples from the large number of cases which have undertaken to say what constitutes a given place a place of business, we may say that where the words are not otherwise limited by the context,—as, for example, in our burglary statute,—the phrase "place of business" means a place where a person carries on some regular commercial occupation, not where he makes some single bargain, or even where he engages in sporadic transactions. "The buying [or selling] of a single vessel containing whisky certainly can not properly be regarded as an occupation or business." *Henderson* v. *Heyward*, 109 *Ga.* 375 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384). We think that a person might set up a regular establishment for the illegal sale of liquor and go regularly into that business; in which event the place he should so set up would be a place of business. In some contexts "business" means lawful business. *Walsch* v. *Call*, 32 Wis. 159, 161. There is, however, nothing in the prohibition statute to indicate such a contextual restriction. It would not be a fair construction of the language of the law to say that one who, in the privacy of his home, made a single sale thereby ipso facto converted his home into a place of business. For this erroneous charge alone the judgment is reversed. Bashinski was doubtless guilty, but his guilt was not shown absolutely beyond question. If the witnesses against him are trustworthy, he will doubtless be convicted again. At any rate we can not say that so direct and serious an error upon one of the very fundamental propositions in the case was harmless. To quote from our great Judge Bleckley (*Cochran* v. *State*, 62 *Ga.* 732): "Those who are impatient with the forms of law ought to reflect that it is through form that all organization is reached. Matter without form is chaos; power without form is anarchy. The State, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence. The public authority has a formal

embodiment in the State; and when it moves, it moves as it has said by its laws it will move. It proceeds orderly, and according to pre-established regulations. The State, though sovereign, can not act upon a citizen in a different manner from that which the laws have ordained. It can not inflict punishment without first trying the prisoner according to law. There is no dispensing power. Courts have none. Courts are bound by the law no less than the prisoner at the bar."

There are other errors assigned, but they are not meritorious.

*Judgment reversed.*