## 3613. HOLLAND *v.* THE STATE.

The grounds of the motion for a new trial are without merit, and the verdict is supported by the evidence.

DECIDED OCTOBER 10, 1911.

Indictment for violation of prohibition law; from Terrell superior court—Judge Worrill. June 19, 1911.

*M. J. Yeomans, R. R. Marlin,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold, M. C. Edwards,* contra.

HILL, C. J. Claude Holland was convicted of a violation of the prohibition law in keeping on hand at his restaurant and "soft drink" establishment (his place of business) spirituous liquor; and, his motion for a new trial being overruled, he brings error. While there are several special assignments of error which we will notice, the main question is one of fact. Did the evidence warrant the jury in coming to the conclusion that the room in which the whisky was found was a part of the restaurant, or place of business, of the accused? The accused ran a restaurant and "soft drink" establishment. In one corner of the room in which the restaurant was located, there was a little room, with one door opening into it from the restaurant, and in this little room there was a refrigerator. A suit-case, or "telescope," containing six pint bottles of whisky, was found in this room, and on top of the refrigerator was also found a bottle about half full of whisky. Around in the room were many empty bottles, which had evidently contained whisky. No other furniture than the refrigerator was found there, and the room was quite small, about eight by ten

feet. The officers who made the case against the accused did not find him at his place of business when they first went there for the purpose of raiding it. They found him somewhere else, and asked him to go with them to his place of business, which he readily did. He did not have his key to this little room, but stated that his brother Henry had it. After the officers told him that they had to get in there in some way, if they had to take a hatchet and break it open, he struck open the door himself. After he had knocked off several planks, he struck with his hatchet inside the room, as though he was "striking at something," and hit the suit-case containing the whisky. There was no exit from this little room, except through the restaurant. There were no windows to it: it was simply a little cut-off in the side of the restaurant. The accused had on several occasions sold whisky, before the whisky was found in his restaurant. He stated to the jury that he was absent from his restaurant the day before the whisky was found there, and he knew nothing of its presence in the little room. His brother Henry testified, that he got the key to the little room from the accused, and that while he was present at the restaurant, in the absence of the accused, a man by the name of Lee Slaughter brought the whisky into the restaurant and gave it to him, and asked that he keep it for him until he called for it; that this whisky was in a crocus sack, and he (witness) took it out of the sack and put it in a suit-case, where it was found by the officers, and that he and Lee Slaughter drank some of the whisky from the pint bottle, which was left half full on the refrigerator. Lee Slaughter testified, that on that night, while on his way to church, he met a negro, who had two large crocus sacks containing bottles of whisky, laboriously carrying them on his shoulder; that the negro asked him to help carry the whisky; that he had never seen this negro before, and did not know who he was; did not ask him where he got the whisky, or where he was going; that when the negro reached his destination he told the witness to help himself, and the witness took eight pint bottles of the whisky for his share; that he did not pay the negro for them, but the negro presented them to him for his assistance in carrying them; that not wishing to take the whisky to church, he took it to the restaurant of the accused, and there left it with Henry Holland until he could call for it. The foregoing is in substance the testimony illustrative of the presence of the whisky

in the little room, with a description of the room and its connection with the restaurant.

Taking all these circumstances together, we are inclined to come to the same conclusion reached by the jury, to wit, that the whisky was the property of the accused, and that the little room was a part of the restaurant. The peculiarity of the construction of this little room, its location with reference to the room in which the restaurant and "soft drink" establishment were operated, there being only one door leading from the little room to the restaurant, the absence of any furniture in the room, except the refrigerator, and the presence of a great number of empty bottles in the little room, would seem to indicate that it was used simply as a hiding place for spirituous liquors, and operated in connection with the restaurant and the "soft drink" establishment of the accused. It was conceded that the little room was entirely controlled by the accused; that only the accused ever went into the room, and that he always kept the key thereto, except on this particular night when it happened to be raided by the officers; and it is significant that, although the accused said that his brother had the key on this night, he failed to find his brother. Why should the brother of the accused have thought it necessary to change this whisky from the sack into a suit-case belonging to his brother? According to his statement, Lee Slaughter simply asked him to keep the whisky, which was already in the sack, until he called for it. The statement of Lee Slaughter as to how he came by the whisky was evidently not believed by the jury. Indeed, the account which he gives of the negro who was burdened with his load of whisky, and the unprecedented generosity of this negro in giving him as much whisky as he wanted for his assistance, and his self-denial in taking only eight pint bottles of whisky, although the negro told him to help himself without limit, would be a severe tax on the credulity of any, except the most credulous. Certainly, weighing all the circumstances, it can not be said that the verdict is wholly unsupported.

The first assignment of error contained in the amended motion for a new trial is that the judge erred in refusing to continue the case at the request of Mr. Yeomans, the counsel for the accused. He had been engaged for six days in the trial of cases in the court, and when this case was called he stated in his place that he had had no opportunity to prepare the case, or to consult the witnesses, and

53

was physically and mentally exhausted, and was unable to go into the trial and do justice to his client. In reply to a question from the judge, he stated that he was not sick, but was simply physically and mentally exhausted, and unable to try the case in justice to his client. The judge makes the following note to this ground of the motion: "The defendant had been under arrest about one week. There were two other counsel associated in the case, and one of the associates was a lawyer of about 15 years of practice and experience, and a clever practitioner and a capable lawyer, and a resident of Dawson, who had not been so constantly engaged as Mr. Yeomans, who, the evidence showed, had been active in looking after the evidence in the case and in consulting with the witnesses. While Mr. Yeomans stated that he was weary, and doubtless was, he represented this case with his usual ability, both in the examination of the witnesses and in his arguments to both the court and the jury. The court was nearing the end of the term. Besides, the court allowed him time to consult with his witnesses before the trial began." We do not think that the trial judge abused his discretion in refusing to continue the case, especially in view of the statement contained in the note of the judge that Mr. Yeomans, although he was doubtless weary from his previous labors, conducted the case with his usual ability, and in view of the further fact that he had two associates who had not been so constantly engaged as himself. It would seem that an accusation of violating the prohibition law did not involve difficulties that could not have been easily surmounted by three experienced and able lawyers, although one of them was "weary, physically and mentally." *Rawlins* v. *State,* 124 *Ga.* 31 (52 S. E. 1); *Brantley* v. *State,* 133 *Ga.* 264 (65 S. E. 426).

The second exception in the amended motion is that the judge erred in allowing a witness to testify that he had on repeated occasions bought whisky from the accused. The first objection to this evidence is that it was not in rebuttal, and the second objection is that it was not relevant or material to the issue then being tried. So far as the first objection is concerned, this was a matter entirely for the discretion of the court. Besides, an inspection of the brief of the evidence shows that it was in rebuttal, not only of the statement of the accused, but of the evidence in his behalf. It is clearly relevant, where one is charged with keeping whisky on hand at his

place of business, as corroborative of that charge, to show that about the time he was charged with having it on hand at his place of business he was selling it illegally.    If he was selling whisky illegally, it is not unreasonable to presume from these facts that he kept his liquor at some place; and what is more likely than that he kept it at his place of business, especially if the place of business was a restaurant and "soft drink" establishment, where there was a little room so conveniently constructed and located for the concealment of his supplies?

The next ground of error that we deem it necessary to notice is the exception to the charge of the court in defining the phrase "place of business," appearing in the general prohibition act of 1907.    The judge charged that "any near-by room or place used by the proprietor in connection with the business, and in such relation to the actual place of business as to indicate a near-by room or compartment, is also a part of his place of business."    This charge of the court was not only fully justified by the evidence, but was in substantial accord with repeated definitions of this phrase by this court.    *Bashinski* v. *State*, 5 *Ga. App.* 3 (62 S. E. 577) ; *Jenkins* v. *State*, 4 *Ga. App.* 859 (62 S. E. 574) ; *Hall* v. *State*, 8 *Ga. App.* 752 (70 S. E. 211).    We conclude that the trial was conducted without error, that the exceptions of law are without merit, and that there is evidence to support the verdict.

*Judgment affirmed.*