### 6430.  REDDING v. THE STATE.

The evidence did not authorize the verdict of guilty.
DECIDED MAY 7, 1915.

Accusation of misdemeanor; from city court of Douglas—Judge Lankford.  March 9, 1915.

*W. W. Bennett, Chastain & Henson,* for plaintiff in error.

*W. A. Wood, solicitor,* contra.

WADE, J.  The defendant was convicted on the charge of keeping liquor at his place of business.  The evidence disclosed that he conducted a barber-shop in a front room on the first floor of a house used as a boarding-house, and that access to this room could be had directly from the street.  A hall through the middle of the house separated the barber-shop and the room immediately behind it from the rooms on the opposite side of the house.  There was no direct means of communication between the barber-shop and the room in its rear, for the door between the two rooms was boarded up and nailed securely.  The defendant occupied as a lodger a room on the second floor, which likewise had no immediate connection

with his barber-shop. According to the testimony of a woman named Stacy Michael, the boarding-house was conducted solely by herself, and the defendant had nothing to do with the house, except that he rented a bedroom upstairs, occupied by himself and one Henry Lowe, for which he paid, and she rented him the barber-shop and barber's chair for a half of the profits of the shop after expenses were paid. She testified that when she was away "at the dormitory at work," the defendant sometimes rented rooms for her to persons applying, and collected the money and turned it over to her, but for this she paid him nothing, and he did this for accommodation only, in her absence. The defendant himself, according to the evidence of the policeman who arrested him, said that he and Stacy Michael "operated the house together and divided the profits equally." Henry Lowe, who roomed with the defendant, testified that he had never bought any liquor from the defendant, but that he roomed with him "in a house run by a woman by the name of Stacy Michael," and that the defendant had some liquor in a quart-bottle sitting on the table in his room when the witness moved into the room with him, and the defendant told him that he was welcome to anything that the defendant had, and on two or three occasions, in the absence of the defendant, the witness went into the room they occupied as a bedroom, and picked up a bottle of liquor and took a drink from it and left some money on the center-table; that he left a dime at one time and at another a quarter, but he never told the defendant that he left the money there, or that he was going to leave the money there, and he did not know who actually got the money, as he never heard the defendant himself say anything about the money or about missing the liquor, and he never told the defendant that he drank the liquor or left the money, but he left money "because he thought the defendant needed it;" that the defendant never sold him liquor, and he knew nothing of his ever selling or offering liquor for sale to any one else; and that while he told the chief of police that he would find liquor in that house, he did not know whose liquor the chief found, and knew nothing about the defendant having any liquor, except as stated above; that he told the chief that he bought some liquor from the defendant, but what he meant when he told him that was what he had related in reference to drinking from the defendant's bottle and leaving money on the table.

The chief of police testified, that the witness Lowe said that he had bought liquor from the defendant at different times, and further told him that he would find liquor in the two-story house occupied by Stacy Michael and himself and others, in a certain room, between the ceiling; and he went there and found two quarts of liquor between the ceiling in a room just back of the barber-shop operated by the defendant; that there was no connection between the room where the liquor was found and the barber-shop, as the door leading from that room to the barber-shop had been nailed up, and the only way to go from the room where the liquor was found into the barber-shop was to come from that room through a door into the hall and go out through the hall and around to the east corner of the house into the barber-shop; that when he went to make the search he told the defendant he wanted a drink of liquor, and the defendant said that he had none, and when he informed the defendant that he was going to search, the defendant told him to "go ahead and search" wherever he pleased, and he then went into the room back of the barber-shop and found the liquor as stated; that he asked the defendant to whom the liquor belonged, and the defendant first said he did not know anything about it, but after they started to the jail the defendant said it belonged to Stacy Michael. Stacy Michael testified, in addition to what has already been recited, that she was running the house in question, had rented it and was paying rent, and that the two quarts of liquor discovered by the policeman between the ceiling were hers and had been found in her private room; that she hid the liquor back of the ceiling to keep anybody from finding it; that she ordered the liquor under a prescription from a doctor at the hospital, for the purpose of washing the scalp of her little boy, who had eczema, and the defendant did not know that she had it in her room, nor did any one else know it so far as she was aware, but some one must have known where it was, or they would not have known where to tell the chief to find it. The defendant, in his statement at the trial, said, that he rented the barber-shop from Stacy Michael, and had nothing to do with the operation of the house; that he knew nothing about the liquor in Stacy Michael's room, and did not know whose it was; that he was in the barber-shop when the policeman called him out and told him he wanted a drink, and he then told the policeman that he did not have any liquor; that he did not

know that the witness Lowe had left any money in his room, or had consumed any whisky there, or that any one else had left any money there.

In *Jenkins* v. *State,* 4 *Ga. App.* 859 (62 S. E. 574), it is said: "The phrase 'at their place of business,' appearing in the general prohibition statute of 1907, includes in its meaning the immediate room or place in which the business in question is conducted, also any near-by room or place used by the proprietor in connection with the business or in such a relation to the actual place of business as to indicate that the near-by room, compartment, etc., is a convenient place which the proprietor would probably use for keeping therein such liquors as he might desire to furnish others for the purpose of inducing trade, or for keeping therein liquors intended for unlawful sale under cover of the business carried on in the main place. (*a*) The preposition 'at' has a great relativity of meaning, conforming readily to the nature of the thing which constitutes its grammatical object and to the principal notion in the mind of the person using it. It generally includes in its meaning all that 'in' would, but not quite as much as 'in and near' would. (*b*) 'A place of business,' within the purview of the State prohibition law, means a place devoted by the proprietor to the carrying on of some form of trade or commerce." In that case the defendant had a little store in LaGrange, and there was a small room in the rear, cut off by a partition wall, in which no goods were usually bought or sold, but where whisky was found; and this court held that having the liquor in the back room was a keeping at the place of business of the defendant.

In *Bashinksi* v. *State,* 5 *Ga. App.* 3 (62 S. E. 577), this court held: "A near-by room which a person uses in connection with the business conducted by him in his regular place of business is a part of his place of business, within the purview of the general prohibition statute." In that case the court approved the following charge of the trial judge: "If you believe, from a consideration of the evidence adduced on the trial of this case, that he did keep such restaurant, that he did keep such soft-drink dispensary, and that on the premises of this establishment conducted by him, and connected therewith in said business, there was a room wherein he had stored alcoholic, spirituous, malt, or intoxicating liquors in any quantity, I charge you if such storage room was connected with that

place of business, the prisoner at the bar would be guilty of a violation of the law of Georgia." In *Smith* v. *State,* 11 *Ga. App.* 89 (74 S. E. 711), this court reaffirmed the ruling in *Jenkins* v. *State,* supra, and held further that the defendant could not justly complain of the following instruction: "If you find that the place out there was so nearly connected with the business of the defendant as to convince you that it was used in conjunction with the business, then that would be such 'a place of business' as contemplated by the law; if it is not so shown, then it would not be." See also *Flahive* v. *State,* 10 *Ga. App.* 401 (73 S. E. 536), and many other cases in which this doctrine is adhered to by this court.

In the present case, so far as the evidence discloses, the room on the ground floor, occupied by the defendant as a barber-shop, was his only place of business in the boarding-house conducted by the woman Stacy Michael, or by the woman and himself together under his exclusive control. The whisky found by the officer was not discovered in the barber-shop or in any room connected directly therewith; and though it is true the whisky was found in the room immediately back of it, which could be entered through a door opening into the hall, it nevertheless appeared that this room was used by Stacy Michael as her private bedroom, and was in no sense under the control of the defendant or used in connection with his business. So also the evidence that he may have kept a bottle of whisky for his own use in a bedroom up-stairs could not be held to show a keeping "at his place of business," so far as relates to the barber-shop. Of course, had it appeared that a large amount of whisky was found in his bedroom under the circumstances, it might have been inferred (since the bedroom and barber-shop were in the same building) that perhaps the accused kept the whisky in the bedroom either for the purpose of unlawful sale or to use in inducing trade or custom in his shop; and the phrase "at his place of business" might possibly, under such circumstances, be stretched to include such a keeping, where it was apparently probable that the keeping was in connection with the business conducted in a different room in the same building. It is true, there was testimony from the chief of police that the accused admitted to him that he and Stacy Michael together conducted the boarding-house, and it is insisted by counsel for the State that the conviction was authorized on the theory that the defendant was interested in the conduct of the

boarding-house in which the liquor was stored, and therefore that the whole house was his place of business. It is undisputed that the only liquor found there was found in a room occupied by the Michael woman, which was not apparently connected in any way with the barber-shop, or directly with the offices or public portions of the boarding-house, except that the room was entered from the hall. Even admitting that the defendant was interested with the Michael woman in operating the boarding-house, we can not hold that whisky stored by her in her own private bedroom therein, wholly without his knowledge or consent so far as the evidence discloses, was kept by him at his place of business. While that question is not before us for determination, if the woman Stacy Michael had herself been charged with keeping liquor at her place of business, and that place of business was a public boarding-house, it does not appear to us that her conviction would be authorized upon proof merely that she had a small quantity of liquor for her own use, and in her own personal bedroom, occupied by her apart from the management and totally disconnected from the operation of the boarding-house itself except in so far as it afforded a place for her personal lodgement and comfort. However, since there is nothing in this case to indicate that the accused had any knowledge whatever that two quarts of liquor were kept by Stacy Michael in the room adjoining his barber-shop but disconnected therefrom, and it does not appear from the evidence at the trial whether the whisky that the witness Lowe found in the room jointly occupied by himself and the accused was found there within two years before the filing of the accusation, which charged the specific offense of keeping liquor on hand at his place of business in the boarding-house, and since the conviction must stand or fall solely on the testimony touching the whisky found in the room occupied by Stacy Michael, the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, J., dissents.*