## 3640.   MORSE *v.* THE STATE.

1. It is not error for the judge to charge the jury that "evidence may be autoptic proference," when the meaning of the technical words is clearly made known to the jury in plain, understandable language.

2. Whether a judge, by language used in his charge to the jury, violates the provisions of the code, by intimating or expressing an opinion as to what has been proved, will be determined in the light of the entire context; and, though it appears that the language, standing alone, might convey an intimation of the judge's opinion on one of the facts of the case, still if, from an examination of the entire context, it appears that the language was in fact hypothetical, no infraction of the statutory limitation upon the judge's power will be declared, unless, indeed, the very ambiguity of the language is such as naturally to leave upon the minds of the jury the impression that the judge was in fact intimating or expressing an opinion upon some issuable phase of the case.

3. Where, in a case involving the question as to whether a certain liquid is an intoxicating liquor, the State introduces in evidence the liquor itself, it is proper for the court to instruct the jury that they may make personal inspection of the liquid, may apply their own senses to it, may look at it, smell of it, taste of it, and thereby determine whether it is or is not an intoxicating liquor, subject to the limitation that they must not drink such a quantity as that, if it were intoxicating liquor it would make them drunk.

4. A general verdict of guilty, upon an indictment containing two counts charging different offenses, which are in fact, as well as in theory, separate transactions, can not be sustained, where there is no evidence to support a prosecution upon one of the counts.

DECIDED NOVEMBER 7, 1911.

Indictment for the sale of liquor, etc.; from Bibb superior court —Judge Felton.   July 6, 1911.

*Jesse Harris, C. A. Glawson, John P. Ross,* for plaintiff in error.
*W. J. Grace, solicitor-general,* contra.

POWELL, J.   Morse was tried on an accusation containing two counts, the first of which charged the sale of intoxicating liquors, and the other of which charged the keeping of liquors on hand at his place of business.

1.   The first assignment of error is that the court erred in charging the jury as follows:   "Evidence may be autoptic proference." Error is assigned as to this charge on two grounds:   (1) that the statement is abstractly incorrect; and (2) that it is misleading.   Considering these points in reverse order, we may say (to borrow a Hibernicism from the private vocabulary of an ex-Justice of the Supreme Court of this State) that the language excepted to is neither leading nor misleading.

As to the other objection—that the language is abstractly incorrect—if incorrectness from a legal standpoint is intended, the objection may be disposed of by citing Wigmore on Evidence, § 1150 et seq. If philological incorrectness is referred to, the objection is more tenable; for, while "autoptic" is a good word, with pride of ancestry, though perhaps without hope of posterity, the word "proference" is a glossological illegitimate, a neological love-child, of which a great law writer confesses himself to be the father (see Wigmore on Evidence, § 1150, note 1). Despite all this, we can not brand the statement as reversible error. This court is rather liberal in allowing the judges on the trial bench the privilege of big words. Cf. *G., F. & A. R. Co.* v. *Sasser,* 4 *Ga. App.* 276 (61 S. E. 505), wherein we refused to reverse the judgment because a judge of a city court used the word "obvious" in his charge to the jury.

Now, lest our manner of treating this exception be regarded as a reflection upon the very able judge of the superior court whose language is under review, let us hasten to explain that the language is all right—that to quote the excerpt alone does him injustice. During the progress of the trial, certain bottles and their contents had been introduced in evidence and were given the jury for their consideration, and the necessity was upon the judge of explaining to the jurors what use they could make of this class of testimony. As to such evidence the older writers used the phrase "real evidence;" but Professor Wigmore, in his wonderful treatise, has pointed out that this is not an accurate expression, and has coined a new phrase, "autoptic proference," to express it. Following Wigmore, Judge Felton used this expression, and then most clearly explained and illustrated to the jury, in plain, simple, homely language, just what the big words mean.

2. The next assignment of error is that the judge, in making this explanation and in applying it to the facts of the present case, intimated or expressed an opinion as to one of the essential elements of the case. Vast quantities of what purported to be intoxicating liquors were found in and about the defendant's place of business. Along with the other evidence, the State introduced two baskets containing half-pint bottles, some labeled "rye whisky," some "gin," and some "peach brandy," and containing liquors resembling in color and odor the intoxicating liquor indicated by the labels on the respective bottles; also a barrel similarly filled. The

defendant introduced no testimony, and made no statement in his own behalf to the jury; but he did contend, through his counsel, that the State had not proved that the contents of the bottles were in fact intoxicating liquors. The judge charged the jury that the State had introduced this physical evidence as "autoptic proference;" that the jury had the right to examine it, and, from an examination thus personally to be made by the jurors, determine whether the bottles in fact contained intoxicating liquor or not; and, in this connection, the court said to the jury: "In this case the State has presented in court that which the State claims is whisky. You have a right to examine it, and look at it, and test it, and determine for yourselves whether or not it is whisky. It has been offered for that purpose, and you have a right to so examine it. . . It is brought into court in order that the jury may have an opportunity of determining, by the application of their own reason and judgment, that that which the State contends is a fact, to wit, that this evidence offered here is, in point of fact, whisky. You have a right, and the State has given you the opportunity, to determine it. I don't mean by that that you have a right to go out there and get drunk on this; I have no reason to presume any such men would do any such act."

The specific contention is that the judge, by the use of the words, "I don't mean by that that you have a right to go out there and get drunk on this; I have no reason to presume any such men would do any such act," intimated the opinion that if the jury drank enough of the liquor, they would get drunk, and, therefore, the opinion that the liquor was intoxicating. At first blush, the point appears to be well taken; but, when it is considered in the light of the whole context (that portion of it which has just been quoted, as well as other portions not quoted), we are not certain that the criticism is well taken. The judge was speaking from a hypothetical standpoint, and was endeavoring to convey to the minds of the jury, by a series of illustrations, what use they might make of the physical evidence before them. His statement, properly construed, was simply equivalent to his saying to the jury that wherever the State contends that a certain liquid introduced in evidence before the jury is whisky, and the accused contends that it is not, the jury would have the right to look at it, smell of it, and taste of it, but not to put it to the test of drinking such a quantity of

it as that, if it were an intoxicating liquor, it would make them drunk. Of course, one way of determining whether a liquid could intoxicate or not would be to drink a quantity of it and see whether it produced that effect, and the judge was merely explaining to the jury that this test, while perhaps a logical one, was so inconsistent with their duties as jurors that no reasonable man would probably conclude that he, while serving as a juror, would have the right to make it. If this is a correct construction to put upon the judge's language, there was no error in it. However, it will not be necessary for us to rule upon it directly and concretely, for the reason that a new trial is to be granted in the case upon another ground, and it is not at all likely that exactly the same words will be used again; and if there be any such ambiguity in the language as that it would as likely mislead the jury into thinking that the judge was expressing an opinion, it is not likely that the same words will be used again, since attention has been called to the matter.

3. One of the exceptions in the record challenges the correctness of the instruction, so far as it lays down the proposition that the jurors have the right to inspect, smell, and taste a liquid introduced in evidence before them for the purpose of determining whether or not it is intoxicating liquor. We realize that some courts of high standing have held that the jurors can not make any such tests. Some courts say that the jurors may look at it and smell of it, but not taste of it. We believe the true rule to be that they may do all these things. We can not see why the sense of taste or the sense of smell does not stand upon the same footing in this respect as the sense of sight. As to the determining of the nature and character of some physical things, the sense of sight may be the superior; but as to liquors it is not. With some men the sense of smell is as to liquors the most accurate; with others, the sense of taste. After more or less practical experience, a person with any fair sense of smell can determine, not only whether a liquid is or is not whisky, but also, with a very fair degree of accuracy, what kind of whisky it is, what grade of whisky it is, and what its constituent elements are; that is to say, the approximate ratio, if it be a blend, in which different kinds of liquids have entered into its preparation. It is certainly in the interest of truth—the supreme object of all legal investigation—to let the jurors, who are the final arbiters of

the question, apply to its solution the most accurate sense they are capable of applying. In this connection, however, a limitation must be noticed as to liquids claimed to be intoxicating. The very nature of the juror's office and of the effects produced by intoxication make it inappropriate, and, indeed, illegal, that the jury should apply the supreme test of drinking such a quantity of the liquor as to make themselves liable to intoxication, if it in fact be of an intoxicating character.

In this connection, one of the present Justices of the Supreme Court tells an amusing incident which occurred during his administration upon the trial bench. A case came before him for trial, involving the question as to whether certain almonds, which had been delivered upon a contract of sale, came up to sample. There were introduced in evidence two little sacks of almonds, one containing the sample and the other containing almonds taken from what had been delivered or tendered upon the contract. The judge learnedly instructed the jury as to how they should proceed with their consideration of the testimony, and instructed them upon the duty of "digesting" all the evidence and thus reaching a true verdict. They stayed out all night, and next morning came in with a verdict. As the jury filed in and indicated their willingness to report, the judge directed the foreman to hand all the papers in the case, together with the exhibits, to the clerk. The foreman replied, "Your honor, here are all the papers, but the jurors got hungry last night and digested the exhibits." This illustrates that the jurors must not make too free a use of the real evidence before them for their consideration. It must be kept in mind, too, that there is a great difference between allowing the jurors to exercise their primary senses of sight, taste, smell, etc., upon real objects introduced before them, and allowing them to make experiments (and to drink the liquor, to see if it be intoxicating, is an experiment) with these objects during their deliberations out of the presence of the court.

There are a number of other assignments of error upon the charge of the court, but we need not discuss them in detail; for they present no new questions, and none of them are meritorious.

4. There is, however, a compelling reason why a new trial should be granted. As we have already said, the indictment contained two counts—the one charging an illegal sale of liquor, and the other

charging the keeping on hand of intoxicating liquor at the defendant's place of business. The jury found the defendant guilty upon both counts; that is to say, they returned a general verdict of guilty, which means in such cases guilty upon both counts. The evidence is overwhelming, so far as the defendant's guilt on the second count is concerned, but there was no evidence whatever as to a sale. The proof would have fully justified a finding (if such an issue had been before the jury) that the accused had the liquors for the purpose of illegal sale; but proof of mere preparedness to commit a crime is not sufficient proof to show that the crime has in fact been committed. The conviction upon the first count can not be sustained. This being so, the verdict is without evidence to support it. The error is not harmless, for under the indictment and the verdict the defendant could be sentenced to the maximum punishment for each offense, and the sentences might be made cumulative. The two counts stand just as if they were two indictments; and the right to impose sentence, where the verdict is general in such a case, is the right to sentence as for two separate and distinct offenses. The law in this respect is well established. *Hall* v. *State,* 8 *Ga. App.* 747 (70 S. E. 211); *Tooke* v. *State, 4 Ga. App.* 495 (61 S. E. 917); *Driver* v. *State, 112 Ga.* 229 (37 S. E. 400). *Judgment reversed.*