# Graham v. State.

*Indictment for Gaming.*

1. *Indictment for gaming; public house, public place, or place where liquor is sold.* On a trial under an indictment for gaming at certain designated places, prohibited by the statute (Code, § 4052), it was shown by the evidence that defendant played at a blacksmith shop which was only used as the owner's private shop, and at no time had any one else, or the public, had any work done there; that the shop was about 20 feet from a public road, with one door fronting on the public road and a back door fronting on a railroad, which was 75 or 100 yards distant; that the front door was closed, and no one could see inside the shop at the time the gaming was going on, except by looking through a crack; that there were only four persons present, only two of whom were playing, and there was no evidence that any other game had been played there; that the playing took place after dark, by lamp light; that while there the owner of the shop gave the other three persons a drink of whiskey, but there was no evidence that the defendant or any other person ever had spiritous, vinous or malt liquors in the shop at any other time. *Held:* (1.) that said shop was neither a "public house;" (2.) nor a "highway" or "public place;" (3.) nor "a house or place where vinous, spiritous or malt liquors were retailed, sold or given away," within the meaning of the statute.

APPEAL from the Circuit Court of CRENSHAW.

Tried before the Hon. JESSE M. CARMICHEAL.

The appellant was tried and convicted under the following indictment: "The grand jury of said county charges, that before the finding of this indictment that Tink Graham played at a game with cards or dice, or some device or substitute for cards or dice, at a tavern, inn, storehouse for retailing spiritous liquors, or house or place where spiritous liquors were at the time sold, retailed or given away, or in a public house, highway, or some other public place, or at an outhouse where people resort, against the peace and dignity of the State of Alabama." Upon the facts disclosed by the evidence, which are sufficiently stated in the opinion, the court at the request of the State, gave the following written charge to the jury, to the giving of which defendant duly excepted: "If the jury believe the evidence beyond a reason-

able doubt, you should find the defendant guilty."

GAMBLE & BRICKEN and D. M. POWELL, for appellant. The place where the evidence showed the gaming charged in the indictment occurred, was not one of the places specified in the statute.—Code, § 4052 ; *Comer v. State,* 62 Ala. 320 ; *Napier v. State,* 50 Ala. 168.

W. C. FITTS, Attorney-General, for the State.—The place where the evidence showed the gaming charged in the indictment occurred, was a place within the meaning of the statute.—Code, § 4052. A blacksmith shop with its front door opening upon the public road and its back door opening upon the Alabama Midland Railroad is certainly a public place, within the meaning of the statute against gaming in certain public places.—*Burnett v. State,* 30 Ala. 19 ; *Skinner v. State,* 30 Ala. 524; *Moor v. State,* 30 Ala. 550 ; *Wilson v. State,* 31 Ala. 371 ; *Bentley v. State,* 32 Ala. 596 ; *Arnold v. State,* 29 Ala. 46; *Cochran v. State,* 30 Ala. 542.

COLEMAN, J.—The defendant was indicted, tried and convicted for violating section 4052 of the Criminal Code, which prohibits gaming with cards or dice, at certain designated places. There was but one witness examined, and the evidence was without conflict. The *venue* and playing were proven, and the question is whether the playing took place, at a public house, or public place, or place where spirituous liquors were sold or given away, within the meaning of the statute.

First : Did the parties play in a public house? We think not. The house was called a blacksmith shop. We have no doubt that a shop or house in which blacksmithing is done for the public, or a house where the public are invited to bring their work, and it was thus understood at the time of playing, although no one may have patronized the shop, would be covered by the statute. The character of the house is not determined so much by the patronage it receives, as by the use to which it is appropriated. Were the public invited there? and was it true that the public could have their work done at that shop? The proof shows that the owner used this shop as his own private shop, and that at no time had any one else, or the public, had any work done there. The playing

was not in a public house.

Second : Was it a public place? The shop was about twenty feet from the public road with one door fronting on the public road, and a back door fronting toward the Alabama Midland railroad, which was from seventy-five to one hundred yards distant. A "highway," as designated in the statute, means a public road. The shop with its door fronting on the public road was situated sufficiently near to the public road to bring it within the influence of the statute, either as a "highway" or "public place," if there were no conditions which excluded this result. The proof shows that the front door was closed, and no one could see inside the shop at the time, except by looking through a crack. There is no evidence that any other game had ever been played in the shop. There were only four persons present, two who were playing, the witness and the owner of the shop, who did not engage in the game. It is fairly inferable that the playing took place after dark, by the use of a lamp. Upon this state of facts, the court could not declare as a conclusion of law, that the place was in a "highway" or "at a public place."—*Comer v. The State*, 62 Ala. 320 ; *Glass v. The State*, 30 Ala. 529 ; *Napier v. The State*, 50 Ala. 169 ; *Coleman v. The State*, 59 Ala. 52.

Third : The evidence shows that while in the shop the owner gave the parties a drink of whiskey. There was no evidence tending to show that the defendant, or any other person, ever had spirituous, vinous or malt liquors in the shop at any other time or other occasion. This one act, under the circumstances, did not constitute the shop "a house or place where vinous, spirituous or malt liquors were retailed, sold or given away," within the meaning of the statute.

The court erred in giving the affirmative charge for the State.

Reversed and remanded.