# *Ex Parte* Pappenburg, *in re* Pappenburg *v.* The State.

## *Violating Prohibition Law.*

(Decided June 3, 1914.   66 South. 32.)

CERTIORARI to Court of Appeals.

Petition of Henry Pappenburg for certiorari to the Court of Appeals, to review and revise the judgment of said court in the case of *Henry Pappenburg v. State,* 10 Ala. App. 224, 65 South. 418, wherein said court affirms the judgment of the trial court convicting petitioner for transporting prohibited liquors, in violation of section 24 of the Fuller bill.   Writ denied.

TIDWELL & SAMPLE, for petitioner.   See brief filed in the cause as reported in 10 Ala. App. 224, 65 South. 418.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.   See brief filed in the cause as reported in 10 Ala. App. 224, 65 South 418.

MAYFIELD, J.—All the Justices except the writer are of the opinion that the application for certiorari should be denied on the authority of the opinion of the Court of Appeals, rendered in this case, and such is the order of this court.

The writer, however, is of the opinion that the application ought to be granted, and the judgment and decision of the Court of Appeals reversed; and the opinion following expresses only his own views of the law upon the subject.

[Ex Parte Pappenburg in re. Pappenburg v. The State.]

Certiorari denied.

MAYFIELD, J.—(dissenting).—The sole question for decision on this record is whether or not the Tennessee river is a "public highway" within the meaning of that phrase as used in section 24 of the "Fuller Bill" (Acts 1909, p. 63). That section reads as follows: "It shall be unlawful for any person, firm, corporation or association, whether a common carrier or not, to accept from another for shipment, transportation or delivery, or to ship, transport or deliver for another said prohibited liquors or beverages or any of them, when received at one point, place or locality in this state to be shipped or transported to or delivered to another person, firm or corporation at another point, place or locality in this state, or to convey or transport over along any public street or highway any of such prohibited liquors for another, and any person violating any provision of this section shall be guilty of a misdemeanor, but the provisions of this section shall not apply to those transporting and delivering to druggists and physicians such alcohol as they are permitted by the laws of the state to sell or dispose of in accordance with the statutory regulations upon that subject."

The defendant was charged and convicted under the following affidavit: "State of Alabama, Morgan County: Morgan County Law and Equity Court. Before me, Thos. W. Wert, judge of the Morgan county law and equity court in and for said county, personally appeared Jeptha V. May, who, being duly sworn, deposes and says that he has probable cause for believing and does believe that within twelve months before making this affidavit, and in said county, Henry Papenburg did convey or transport over or along a public highway, to wit, the Tennessee river, prohibited liquors, to wit, beer, for

one R. C. Leib, against the peace and dignity of the state of Alabama.   Jeptha V. May.

"Sworn to and subscribed before me this the 6th day of Sept., 1913.

"Thos. W. Wert.

"Judge of the Morgan County Law and Equity Court."

The sufficiency of this affidavit to support a cnviction was tested by demurrer, and by motion in arrest of judgment; the insistence of the accused being that the Tennessee river was not a "public highway" within the meaning of that phrase as used in section 24 of the act above quoted, which made it a criminal offense to carry or transport prohibited liquors along, across, or over "any public street or highway."   The trial court ruled this point against the accused, and he appealed to the Court of Appeals, and that court ruled the point against him, and he applies to this court to revise the decision of the Court of Appeals.

There can be no doubt that the Tennessee river is a public highway for some purposes, and this is not denied, but is conceded, by counsel for the petitioner. But is it a highway within the meaning of that word as used in section 24 of the act quoted?   That is to say, did the Legislature, in using the phrase "any public street or highway" intend to include rivers like the Tennessee, which are navigable, and, for some purposes, are undoubtedly "public highways?"   It is our duty to give approval to the legislative will, if we can ascertain that will from the language used in the statute.

The word "highway" and the phrase "public highway" have each been the subject of judicial construction when used in criminal and penal statutes like the one in question.   The case of *Comer v. State,* 62 Ala. 320, is one of those cases, and it was there said:   "Every

thoroughfare which is used by the public, and which is, in the language of the English books, 'common to all the king's subjects,' is a highway, whether it be a carriageway, a horseway, a footway, or a navigable river."

In *Glass v. State*, 30 Ala. 529, it was said: "It must be conceded that, under the existing laws of the United States and of this state, the navigable rivers within this state are public highways for certain purposes; but it does not follow that they are so for all purposes. [*Bullock v. Wilson*], 2 Port. 436; [*Morgan v. Reading*], 3 Smedes & M. [Miss.] 366."

In *Mills v. State*, 20 Ala. 86, a highway, within the meaning of the statute then of force against gaming, was defined to be: "A public road; that is, a road dedicated to and kept up by the public, as contradistinguished from private ways or neighborhood roads, which are not so kept up."

This case has been followed and expressly reaffirmed in *Napier v. State*, 51 Ala. 171, *Dickey v. State*, 68 Ala. 509, and *Graham v. State*, 105 Ala. 132, 16 South. 934, holding that a navigable river was not a public highway within the meaning of the statutes which prohibited gaming on a "highway." The *Glass Case, supra*, followed the opinion and decision in *Mills' Case, supra*, to the effect that, while navigable rivers were public highways for some purposes, they were not highways within the meaning of statutes like the one in question.

There is also a rule of construction which tends to show that "highway" as used in the statute quoted was not used in its general and broad sense, but in a restricted sense. The word "highway" as used in the statute follows the word "street," and in such cases it is construed to be used in the restricted sense.

Mr. Endlich, in his work on Interpretation of Statutes, states the rule to be that where a general word fol-

lows particular and specific words of the same nature
as itself, which is the case here, the general word takes
its meaning from the particular preceding words of
the same nature, and is presumed to be restricted to
the same sense as those words; that is, the general word
is then presumed to comprehend only things of the same
kind as those designated by the specific words, unless
there be something to show a wider sense was intended,
and he illustrates the rule by the following examples:
"The Sunday Act (St. 29 Car. 2, c. 7), which enacts
that 'no tradesman, artificer, workman, laborer, or other
person whatsoever, shall do or exercise any labor, bus-
iness, or work of their ordinary callings upon the Lord's
Day,' has been held not to include a coach proprietor or
a farmer, or, no doubt, an attorney; the word 'person'
being confined to those callings like those specified by
the preceding words.   *   *   *   An act which made it
a felony to break and enter into a 'dwelling, shop, ware-
house, or countinghouse' would not include a workshop,
but only that kind of shop which had some analogy with
a warehouse; that is, one for the sale of goods.  In an
act imposing a penalty on unqualified persons navigat-
ing 'any wherry, lighter, or other craft,' the last word
would include only vessels of the same kind as wherries
and lighters, not steam tugs which carried neither pas-
sengers nor goods.   *   *   *   The St. 11 Geo. 2, c. 19,
which authorizes the distress for rent of 'corn, grass, or
other product' growing on the demised lands, includes
only products similar to grass and corn; but not young
trees, which, though unquestionably products of the
land, are of a different character from the products
specified by the earlier terms.  For the same reason,
young trees are not included in the act which punishes
the stealing of 'any plant, root, fruit, or vegetable pro-
duction growing in a garden, orchard, nursery ground,

hot-house or conservatory."—Endlich, Int. Stat. 568-570.

Mr. Sutherland, in his work on Statutory Construction, announces the same rule.   He gives the following examples:   "It was held that a bull was not included under the words 'or other cattle' as used in a statute which made it indictable for any person to wantonly or cruelly beat, abuse, and ill treat any horse, mare, gelding, mule, ass, ox, cow, heifer, steer, sheep, or other cattle.   Bayley, J., said: 'Horse, mare, gelding, are one class; ox, cow, heifer, and steer are another; and in my opinion the bull is not included in this act.'   *   *   * A Michigan statute gave every wife, child, parents, guardian, husband or other person' a right of action against a liquor seller for injury done to the plaintiff by reason of the intoxication of any person.   On the ground and principle under consideration, it was held that the intoxicated person himself was not within the statute."— 2 Lewis' Sutherland, Stat. Con. 816-818.

There is another rule of construction in this connection which tends to show that "highway" as used in this statute does not include the Tennessee river.   That rule is that general words following particular words, as "highway" following "streets," will not be held to include any of a superior class to that to which the particular words belong.

An English statute forbade salmon fishing in the waters of certain enumerated streams and "all other waters from which salmon are taken"; and this was held to include only rivers inferior to those enumerated.

These rules, however, are but rules of construction, intended only as aids to the court in ascertaining the meaning intended by the Legislature, and not to defeat that will by giving the words a more restricted meaning than the Legislature intended.   The doctrine of ejusdem

generis must not be carried to the extreme of depriving general terms of all meaning or scope for operation and effect. If the intention of the Legislature is apparent, then there is no room for rules of construction; they would tend to confuse rather than aid.—*Foster v. Blount,* 18 Ala. 687.

We think, however, that the doctrine of ejusdem generis does aid and apply in this case, and shows that the Tennessee river or other navigable waterways were not included within the meaning of the word "highway" as used in the section of the act in question. In fact, to hold that such rivers are included would render useless other provisions of the act as to common carriers. To restrict the words, as contended by the petitioner, would give effect to all parts of the act; but to include within them the navigable rivers, railroads, and all highways would make other parts of the act useless.